No. 24-1420

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

RAYMOND LOFSTAD; GUS LOVGREN,

*Plaintiffs-Appellants*,

v.

GINA RAIMONDO, Secretary, U.S. Department of Commerce; JANET COIT,
Assistant Administrator for Fisheries, National Marine Fisheries Service;
NATIONAL MARINE FISHERIES SERVICE,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court*
*for the District of New Jersey, No. 1:22-cv-7360*
*Hon. Robert Kirsch*

_____

## BRIEF OF SEAFOOD HARVESTERS OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE

_____

J. Timothy Hobbs
K&L GATES LLP
501 Commerce Street, Ste. 1500
Nashville, TN 37203
Telephone: (615) 780-6700
Email: tim.hobbs@klgates.com

Counsel for *Amicus Curiae* Seafood
Harvesters of America

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 29(c)(4)(A), *amicus curiae* Seafood Harvesters of America states that it is a nonprofit corporation without any parent companies, subsidiaries, or affiliates, and does not issue stock to the public.

<u>*/s/ J. Timothy Hobbs*</u>
J. Timothy Hobbs
Counsel for *Amicus Curiae* Seafood
Harvesters of America

# <u>TABLE OF CONTENTS</u>

I.    Identity and Interests of *Amicus Curiae* and Authority to File .................... 1

II.   Summary of Argument ................................................................ 2

III.  Relevant Background ................................................................ 3

IV.   Argument ............................................................................ 6

    A.   Council Members Are Not "Officers of the United States." .............. 7

        1.   Councils are advisory bodies without significant
            authority. ................................................................ 8

        2.   The Act's text and structure show Councils lack
            significant authority. ............................................... 11

            a.   The Council's role is limited to proposing
                recommendations. ....................................... 11

            b.   NMFS has unilateral authority to regulate without
                a Council recommendation. .......................... 16

        3.   Appellants' assertions that the Councils wield
            "significant authority" are unavailing. ................................... 18

    B.   Appellants' Attempt to Dismantle the Act Should Be Rejected. ....... 23

V.    Conclusion .......................................................................... 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.P. Bell Fish Co., Inc. v. Raimondo*,
  94 F.4th 60 (D.C. Cir. 2024)............................................................................1

*Auffmordt v. Hedden*,
  137 U.S. 310 (1890)........................................................................................9

*Buckley v. Valeo*,
  424 U.S. 1 (1976).......................................................................................8, 9

*Conservation L. Found. of New England, Inc. v. Franklin*,
  989 F.2d 54 (1st Cir. 1993)..........................................................................16

*Conservation L. Found. v. Evans*,
  360 F.3d 21 (1st Cir. 2004)...........................................................................13

*Conservation L. Found. v. Pritzker*,
  37 F. Supp. 3d 254 (D.D.C. 2014)...............................................................24

*Conservation L. Found. v. Ross*,
  374 F. Supp. 3d 77 (D.D.C. 2019)...............................................................13

*Flaherty v. Bryson*,
  850 F. Supp. 2d 38 (D.D.C. 2012)..........................................................14, 23

*Freytag v. Comm'r of Internal Revenue*,
  501 U.S. 868 (1991)......................................................................................20

*Goethel v. Pritzker*,
  No. 15-cv-497, 2016 WL 4076831 (D.N.H. July 29, 2016), *aff'd
  sub nom. Goethel v. U.S. Dep't of Com.*, 854 F.3d 106 (1st Cir.
  2017) ..............................................................................................................10

*Guindon v. Pritzker*,
  240 F. Supp. 3d 181 (D.D.C. 2017)................................................................1

*Gulf Restoration Network, Inc. v. Nat'l Marine Fisheries Serv.*,
  730 F. Supp. 2d 157 (D.D.C. 2010)........................................................10, 21

*Hajada, Inc. v. Evans*,
    263 F. Supp. 2d 346 (D.R.I. 2003) ....................................................14

*Hall v. Evans*,
    165 F. Supp. 2d 114 (D.R.I. 2001) ...................................................10

*J.H. Miles & Co. v. Brown*,
    910 F. Supp. 1138 (E.D. Va. 1995) ........................................9, 15, 17

*Lucia v. S.E.C.*,
    585 U.S. 237 (2018)...............................................................8, 19, 20

*Massachusetts v. Daley*,
    170 F.3d 23 (1st Cir. 1999)...............................................................5

*Mexican Gulf Fishing Co. v. United States Dep't of Com.*,
    60 F.4th 956 (5th Cir. 2023) ........................................................15, 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)...........................................................................16

*N.C. Fisheries Ass'n v. Gutierrez*,
    550 F.3d 16 (D.C. Cir. 2008).............................................................21

*Nw. Env't Def. Ctr., Or., Inc. v. Evans*,
    No. 87-cv-229, 1988 WL 360476 (D. Or. Aug. 12, 1988)..................10

*Nw. Env't Def. Ctr. v. Brennen*,
    958 F.2d 930 (9th Cir. 1992) ........................................................9, 20

*United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*,
    No. 3:21-cv-247 *et seq.*, 2022 WL 2222879 (D. Ala. June 21,
    2022) ................................................................................................10

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021)......................................................................6, 9, 25

**Statutes**

16 U.S.C. § 1801 ...........................................................................*passim*

16 U.S.C. § 1851 ....................................................................4, 12, 24

16 U.S.C. § 1852.............................................................................*passim*

16 U.S.C. § 1853 ...................................................................................21, 24

16 U.S.C. § 1854 .........................................................................*passim*

16 U.S.C. § 1855 .........................................................................*passim*

Administrative Procedure Act....................................................14, 15

Magnuson-Stevens Fishery Conservation and Management Act.......................2, 26

Pub. L. 109-479 (Jan. 12, 2007)..................................................24

**Other Authorities**

50 C.F.R. § 600.305(a)(1) ...........................................................12

87 Fed. Reg. 49573 (Aug. 11, 2022)..............................................20

87 Fed. Reg. 49796 (Aug. 12, 2022)..............................................20

Fed. R. App. P. 29(a)(4)(E).........................................................2

Notice of Availability for Amendment 22 ....................................20

S. Rep. 109-229 (Apr. 4, 2006)...................................................24

U.S. Const., art. II, § 2, cl. 2 .......................................................7

## I.   IDENTITY AND INTERESTS OF *AMICUS CURIAE* AND AUTHORITY TO FILE

Seafood Harvesters of America ("Harvesters") is the largest commercial fishing association in the United States and is based in Washington, D.C.  Harvesters represent participants in the U.S. commercial fishing industry that hold commercial fishing permits issued by the federal government entitling them to catch and sell certain species of fish from U.S. federal waters around the country.  Appellants attack the regulatory regime that helps conserve and manage these U.S. fisheries for long-term utilization.  Appellants' claims thus directly threaten the commercial and conservation interests of the Harvesters in U.S. fisheries, interests they have protected through their longstanding engagement in the process that helps develop regulations that govern their businesses.

Harvesters are sympathetic to the plight of the Appellants and their loss of fishing quotas through reallocation in favor of recreational anglers under the regulatory action at issue.  Indeed, Harvesters' members regularly challenge such reallocations. *See, e.g., A.P. Bell Fish Co., Inc. v. Raimondo*, 94 F.4th 60 (D.C. Cir. 2024); *Guindon v. Pritzker*, 240 F. Supp. 3d 181 (D.D.C. 2017).  But instead of challenging the particulars of the reallocation at issue, Appellants instead seek to scrap the entire management regime that has been in place for nearly 50 years.  Harvesters contend that Appellants' legal claims lack merit and the remedy they seek in overbroad and inappropriate.

All parties have consented to the filing of this amicus brief.  In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), Harvesters certify that neither party or its counsel authored the amicus brief in whole or in part; and neither party, its counsel, or any person other than Harvesters (or its counsel or members) contributed money that was intended to fund preparing or submitting this amicus brief.

## II.     SUMMARY OF ARGUMENT

Appellants seek to dismantle the process by which ocean fisheries have been managed in this country for nearly 50 years.  The relief Appellants demand would create massive, nationwide uncertainty around how ocean fisheries are to be managed, disrupt commercial investment, cause untold economic losses, and subject numerous fish species to overfishing and depletion.

Such drastic outcomes are unjustified.  They are also unnecessary.  Appellants concoct a constitutional issue where there is none.  The regional fishery management councils ("Councils") established by the Magnuson-Stevens Fishery Conservation and Management Act ("Act") are advisory bodies.  They do not set federal policy that the Secretary of Commerce, acting through the National Marine Fisheries Service ("NMFS"), is required to rubber stamp.  The statute's plain language makes clear that members of the Councils are not "Officers of the United States" who must be appointed in accordance with the Appointments Clause.  The district court and

nearly every other court to consider the question has agreed. This Court should affirm.

## III.    RELEVANT BACKGROUND

Appellants challenge Amendment 22 to the Summer Flounder, Scup, and Black Sea Bass Fishery Management Plan ("Plan" or "FMP"), which reallocates fishing quotas for those three species in favor of recreational anglers. But Appellants do not challenge the merits of the reallocation; rather, Appellants use Amendment 22 only as a vehicle to bring their constitutional challenges to the regulatory regime established by the Act.

Congress enacted the Act in 1976 "to take immediate action to conserve and manage the fishery resources found off the coasts of the United States" and "to promote domestic commercial and recreational fishing under sound conservation and management principles." 16 U.S.C. § 1801(b)(1), (3).

Under the Act, the country is divided into eight regions, with each region having a regional fishery management Council that is charged with developing proposals to manage the marine fisheries in its respective jurisdiction. *See id.* § 1852. The Councils play an important role in the management of our nation's fisheries, as they develop Plans to manage stocks of fish under their respective jurisdictions and propose management measures to the Secretary of Commerce ("Secretary"). *See id.* § 1852(h).

The Act sets broad standards for fisheries management and provides regional flexibility to the Councils to recommend measures to meet those standards. *See id.* §§ 1851, 1852. The objective was to avoid a "top-down" approach where dictates are issued from a centralized bureaucracy, and instead allow stakeholders the ability to participate in the development of regional management proposals for the fisheries in which they are engaged. *See id.* § 1801(b)(5) (explaining the regional Councils were established to "exercise sound judgment in the stewardship of fishery resources" that "will enable the States, the fishing industry, consumer and environmental organizations and other interested persons to participate in, and advise on, the establishing and administration of plans"). Congress empowered the Councils with flexibility to tailor their management recommendations to the needs of the regional fisheries within their purview. *Id.*; *see id.* § 1852(h).

Councils hold public hearings, establish scientific committees and industry advisory panels, develop research priorities in conjunction with the committees, submit periodic reports to the Secretary (as necessary), and generally advise the Secretary on fisheries management. *See id.* § 1852(g)(1)(A); *see also id.* § 1852(h)(3), (4). The Council structure allows stakeholders and all other interested persons an opportunity to be heard in the development of FMPs and amendments to such FMPs, and with respect to the administration and implementation of the Act. *Id.* § 1852(h)(3).

4

Councils are made up of voting and nonvoting members. *Id*. § 1852(b), (c). The voting members include: (i) members required to be appointed by the Secretary, (ii) NMFS's regional director or designee within the geographic area concerned, and (iii) the principal state official or designee with marine fishery management responsibility who is designated by the state governor. *Id*. § 1852(b)(1)(A)–(C).

Once a Council completes its advisory work, the Secretary, acting through the National Oceanic and Atmospheric Administration and NMFS, reviews the Council's proposed measures. *Id*. § 1854(a)–(b). The Secretary approves those measures if they are consistent with the Act and its objectives, other laws, and the Plans and their objectives; and, where appropriate, the Secretary promulgates the necessary federal regulations. *Id*.; *see Massachusetts v. Daley*, 170 F.3d 23, 27 (1st Cir. 1999) (concluding FMPs "are proposed by state Councils but the final regulations are promulgated by the Secretary").

The Secretary also has the authority to act unilaterally without a Council recommendation, such as where a fishery requires conservation and management, and a Council fails to act after a reasonable period, 16 U.S.C. § 1854(c)(1)(A), or where the Secretary finds that an emergency exists or that overfishing is occurring, *id.* § 1855(c)(1).

## IV.   ARGUMENT

Appellants' claims are foreclosed by the plain language of the Act.  The statute makes clear that Council members are *not* officers of the United States within the meaning of Article II of the Constitution because they do not exercise significant authority.  The statute instead charges the Secretary with that role.  Because the Councils are merely advisory bodies, the appointment of their members need not comport with Article II.  Accordingly, the district court's dismissal of Appellants' claims—all of which turn on the flawed premise that Council members are officers of the United States—should be affirmed.

Even if the Court concludes that portions of the Act are constitutionally infirm, Appellants' requested relief would be detrimental to Harvesters and the fish stocks on which they depend.  Appellants' remedy—to "set aside" the challenged regulations as the product of a flawed regulatory regime—would effectively nullify that entire regime and leave federal fisheries essentially unregulated going forward. *See* Br. at 63 (contending that Council actions are "void *ab initio*" and that NMFS also "lacked power under statute" to regulate).  Such an outcome conflicts with Supreme Court case law requiring courts to "'try to limit the solution to the problem' by disregarding 'problematic portions'" of the Act, "while leaving the remainder intact." *United States v. Arthrex, Inc.*, 594 U.S. 1, 23 (2021) (citation omitted). Disregarding only the purportedly problematic portions of the Act would not only

preserve 50 years of regulations implemented by NMFS (largely on the Councils' recommendations), but would also avert major disruptions to fisheries management and conservation that would negatively affect Harvesters and their members who are governed by those regulations. The Court should reject Appellants' attempt to dismantle the Act by giving full effect to the portions of the Act that comport with the Constitution.

## A.    Council Members Are Not "Officers of the United States."

Appellants mischaracterize provisions of the Act to manufacture constitutional issues. The plain language of the Act makes clear that Council members are not "Officers of the United States" within the meaning of the Appointments Clause because, unlike officers, they do not wield significant authority. Nearly every court to have considered Appellants' misguided argument has rejected it.

The Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all other Officers of the United States" and that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2, cl. 2.

Public officials are "Officers" within the meaning of Article II if "their duties [are] 'occasional or temporary' rather than 'continuing and permanent'" and "they

'exercis[e] significant authority pursuant to the laws of the United States.'" *Lucia v. S.E.C.*, 585 U.S. 237, 245 (2018). Officers, "[f]ar from serving temporarily or episodically," instead "'receive a career appointment . . . [that] is to a position created by statute, down to its 'duties, salary, and means of appointment.'" *Id.* at 248 (quoting *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878 (1991)).

By contrast, non-officers "are lesser functionaries subordinate to officers of the United States" and "are not subject to the control or direction of any other executive, judicial, or legislative authority." *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976). For non-officers, "the Appointments Clause cares not a whit about who named them." *Lucia*, 585 U.S. at 245 (citing *United States v. Germaine*, 99 U.S. 508, 510 (1879)).

Although the Act establishes Councils and specifies Council members' duties, salary, and manner of appointment, *see* 16 U.S.C. § 1852(a)–(d), Council members are not officers of the United States because they do *not* exercise significant authority in carrying out their functions. Rather, Council members are mere experts who advise the Secretary on a temporary, occasional basis and who lack final decision-making authority.

### 1.   Councils are advisory bodies without significant authority.

As nearly every court to decide the issue has concluded, Councils are expert advisory bodies that lack significant regulatory authority under the Act.

8

It is only the individuals "exercising significant authority pursuant to the laws of the United States" who are "'Officer[s] of the United States'" that must "be appointed in the manner prescribed by" Article II. *Buckley*, 424 U.S. at 126; *cf. Arthrex, Inc.*, 594 U.S. at 13 (concluding "'lesser functionaries' such as employees or contractors" do not "exercise significant authority pursuant to the laws of the United States") (alterations adopted). Mere "expert" advisors, however, are *not* officers of the United States, required to be appointed in the manner described under Article II. *See Auffmordt v. Hedden*, 137 U.S. 310, 326–27 (1890) (concluding a merchant appraiser was a non-officer because he was "an executive agent, as an expert assistant to aid in ascertaining the value of goods, selected for the particular case . . . and for his special knowledge").

Here, the district court correctly held that the Mid-Atlantic Council is not constitutionally defective because the Council, "rather than exercising federal authority itself, is a body of individuals who lend their expertise to the Secretary in carrying out her role." 2-JA-48. Other courts agree:

> the Councils appear to be designed to function as advisers, i.e., experts in the field who assist the Secretary in his role in managing the fishery. They cannot promulgate regulations, and they do not have any independent authority. Their role is to assist the Secretary.

*J.H. Miles & Co. v. Brown,* 910 F. Supp. 1138, 1159 (E.D. Va. 1995); *see, e.g.*, *Nw. Env't Def. Ctr. v. Brennen*, 958 F.2d 930, 937 (9th Cir. 1992) (concluding that a judicial "declaration that the Council's composition violates the Constitution" would

not redress plaintiff's injury because "[a]lthough the Council proposed the challenged fishery regulations, those regulations were implemented by the Secretary after review"); *Gulf Restoration Network, Inc. v. Nat'l Marine Fisheries Serv.*, 730 F. Supp. 2d 157, 174 (D.D.C. 2010) (Council's FMPs "do not establish any rights or obligations or create any binding legal consequences" because "[a]doption of implementing regulations [by NMFS] is mandatory"); *Hall v. Evans*, 165 F. Supp. 2d 114, 143 (D.R.I. 2001) ("It is the Secretary of Commerce, and not the Councils, who is authorized to promulgate a regulation."); *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, No. 3:21-cv-247 *et seq.*, 2022 WL 2222879, at *19 (D. Ala. June 21, 2022) ("Councils under the [Act] are simply advisory bodies and have no legal authority."); *Goethel v. Pritzker*, No. 15-cv-497, 2016 WL 4076831, at *10 (D.N.H. July 29, 2016) ("Significant authority over federal government actions comes from the ability to promulgate, not propose, implementing regulations for a fishery management plan or plan amendment."), *aff'd sub nom. Goethel v. U.S. Dep't of Com.*, 854 F.3d 106 (1st Cir. 2017); *Nw. Env't Def. Ctr., Or., Inc. v. Evans*, No. 87-cv-229, 1988 WL 360476, at *8 (D. Or. Aug. 12, 1988) ("the Pacific Fishery Management Council does not exercise significant authority over federal government actions").

These cases demonstrate that Councils merely play an advisory role and do not wield significant authority.

**2.    The Act's text and structure show Councils lack significant authority.**

The Act's text and structure foreclose Appellants' claims.  Under the Act, there are only two ways fishing regulations become law: (1) NMFS adopts a Council recommendation after independently determining that the recommendation is consistent with Congress's objectives and applicable law, or (2) NMFS acts unilaterally without a Council recommendation.  Either way, the Act vests the Secretary—and not the Councils—with regulatory authority.

*a.    The Council's role is limited to proposing recommendations.*

When a Council submits a Plan (or amendment thereto) to NMFS, the Act requires NMFS to "immediately commence a review . . . to determine whether it is consistent with the national standards, the other provisions of [the Act], and any other applicable law."  16 U.S.C. § 1854(a)(1)(A).  Likewise, when a Council proposes regulations, NMFS must "immediately initiate an evaluation of the proposed regulations to determine whether they are consistent with the fishery management plan, plan amendment, [the Act], and other applicable law."  *Id.* § 1854(b)(1).  That is, if the Councils' proposed Plans or regulations are inconsistent with any statute, law, or a Plan (or an amendment), NMFS has broad authority to reject the Councils' proposals.

Determining compliance with the provisions of the Act, other laws, and the FMPs necessarily requires NMFS to make discretionary policy judgments—*not* just

binary legal determinations.  For example, the Act sets forth certain national standards for fishery conservation and management: National Standard 2 requires management measures to be based upon the "best scientific information available"; National Standard 7 requires measures to, "where practicable, minimize costs and avoid unnecessary duplication"; National Standard 8 requires measures to "minimize adverse economic impacts" on fishing communities; National Standard 9 requires that measures minimize bycatch and bycatch mortality "to the extent practicable"; and National Standard 10 requires that measures "to the extent practicable, promote the safety of human life at sea."  16 U.S.C. § 1851(a)(2), (7), (8), (9), (10).  Congress further charged *NMFS* with drafting advisory guidelines based on these national standards *for the Councils to follow* when developing management recommendations.  *See id.* § 1851(b); 50 C.F.R. § 600.305(a)(1) ("This subpart establishes guidelines, based on the national standards, to assist in the development and review of FMPs, amendments, and regulations prepared by the Councils and the Secretary.").

Determining whether Council measures are based on the "best scientific information available" or accomplish some other objective "where" or "to the extent practicable" are quintessential policy judgments that require NMFS to weigh various considerations.  "Congress's inclusion of the term 'practicable' [in several national standards] is thus critical; it is the means by which it 'delegated to the agency the

discretion to weigh the relevant factors' embodied in the [Act's] competing objectives." *Conservation L. Found. v. Ross*, 374 F. Supp. 3d 77, 91–92 (D.D.C. 2019) (quoting *Oceana, Inc. v. Pritzker*, 24 F. Supp. 3d 49, 67 (D.D.C. 2014)).

The Act expressly provides NMFS with authority to disapprove a Council recommendation if, for example, NMFS determines that the Council's proposal does not minimize bycatch "to the extent practicable." Determining what is "practicable" requires the exercise of policy judgment and discretion on the part of NMFS. *See Conservation L. Found. v. Evans*, 360 F.3d 21, 28 (1st Cir. 2004) ("We think by using the term 'practicable' Congress intended rather to allow for the application of agency expertise and discretion in determining how best to manage fishery resources.").

NMFS must also review Council recommendations for consistency with "other provisions of this chapter"—i.e., the Act[1]—including Congress's own findings, purposes, and policies. 16 U.S.C. § 1854(a)(1), (b)(1); *see id.* § 1801(a)–(c). One purpose of the Act is to "promote domestic commercial and recreational fishing under sound conservation and management principles." *Id.* § 1801(b)(3). A policy of the Act is to "assure that the national fishery conservation and management program . . . is workable and effective." *Id.* § 1801(c)(3). Thus, the Act expressly

---

[1] The reference to "this chapter" in 16 U.S.C. § 1854(a)(1) and (b)(1) is to Chapter 38 of Title 16 of the United States Code, which spans §§ 1801 through 1891d.

provides NMFS with authority to disapprove a Council recommendation if NMFS determines it will not promote fishing under "sound conservation and management principles" or will not be "workable and effective." *Id.* § 1801(b)(3), (c)(3). These statutory provisions provide NMFS with broad authority to disapprove a Council's recommendation on policy grounds. Appellants do not address these provisions and thus ignore statutory language that cuts against their preferred interpretation.

Moreover, the Act requires NMFS to undertake an *independent* assessment about compliance with these statutory requirements without deference to the Council's determinations. *See* 16 U.S.C. § 1854(a)–(b). Thus, a Council might determine that its recommended action minimizes bycatch to the extent practicable; but NMFS is required to undertake its own determination on that point, which renders the Council's determination meaningless and non-binding. *Id.*; *see also Flaherty v. Bryson*, 850 F. Supp. 2d 38, 54 (D.D.C. 2012) ("[I]t is NMFS's role . . . to ensure that the Council has done its job properly under the [Act] and any other applicable law . . . While NMFS *may* defer to the Council on policy choices, the Act plainly gives NMFS the final responsibility for ensuring that any FMP is consistent with the [Act]'s National Standards, and 'the overall objectives' of the Act.") (citation omitted) (emphasis added). In *Flaherty*, the district court recognized that NMFS would violate the Administrative Procedure Act by merely deferring to the Council's recommendation without explaining how that recommendation complied

with the Act.  *See* 850 F. Supp. 2d at 55; *see also Hajada, Inc. v. Evans*, 263 F. Supp. 2d 346, 354 (D.R.I. 2003) (NMFS's approval of a Council's recommendation born of a political compromise between two industry groups was arbitrary because the recommendation lacked scientific justification the Act required NMFS to show).

Indeed, litigation against an FMP is directed strictly against NMFS's final rule to implement it, not the Council's action, which is why the Appellants in this case filed suit not when the Council acted to recommend Amendment 22, but only when NMFS issued its Final Rule implementing Amendment 22.  *See* 3-JA-593 (Final Rule dated Nov. 17, 2022), 2-JA-59, 86 (Appellants' complaint dated Dec. 16, 2022); 16 U.S.C. § 1855(f)(1) (petition for review must be filed within 30 days after publication of the action in the Federal Register).  To successfully challenge an FMP or amendment, a litigant must show that NMFS's action implementing it, not the Council's action recommending it, violated the Administrative Procedure Act.  *See* 16 U.S.C. § 1855(f); *e.g.*, *J.H. Miles & Co.*, 910 F. Supp. at 1159 (actions by the Mid-Atlantic Council could not violate the Administrative Procedure Act because "the Council is not an 'agency' within the meaning of that Act").  A court's vacatur of a NMFS final rule is definitive; the court does not also take action against or even address the Council's underlying FMP.  *See, e.g., Mexican Gulf Fishing Co. v. United States Dep't of Com.*, 60 F.4th 956, 976 (5th Cir. 2023) (holding unlawful and setting aside a NMFS final rule but not addressing the Council's FMP

amendment).  The operative action to be enjoined is NMFS's; the Council's action has no independent operative effect to be enjoined.

These statutory provisions make clear that the Council's role is limited to proposing recommendations to NMFS.  It has no independent authority.

> b.    *NMFS has unilateral authority to regulate without a Council recommendation.*

The Act also provides NMFS with authority to act *without* a Council recommendation.  For example, if NMFS disapproves a Council's FMP or amendment, and the Council fails to submit a revised FMP or amendment, NMFS can unilaterally adopt its own.  16 U.S.C. § 1854(c)(1)(B).

NMFS can also unilaterally adopt its own measures if a fishery "requires conservation and management," but the relevant Council fails to submit a Plan or amendment "after a reasonable period of time."  16 U.S.C. § 1854(c)(1)(A).  NMFS is the entity that determines whether a fishery "requires" conservation and management, and whether a "reasonable" period has elapsed with Council inaction.  *See id*.; *see also Conservation L. Found. of New England, Inc. v. Franklin*, 989 F.2d 54, 60–61 (1st Cir. 1993) (concluding what constitutes a "reasonable time" for a Council to act is "solely within the Secretary's discretion" and "[t]he . . . Act also unequivocally vests the Secretary with the discretion to determine whether a Council's progress on conservation and management is reasonable").  Courts must defer to NMFS's rational determinations on these questions.  *See Motor Vehicle*

*Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Likewise, NMFS can act unilaterally where NMFS determines that "an emergency or overfishing exists or interim measures are needed to reduce overfishing for any fishery." 16 U.S.C. § 1855(c)(1). Again, NMFS is the only entity that determines whether an emergency exists such that it needs to act promptly and unilaterally: the Council has no say. While a separate provision requires NMFS to act on an emergency basis if "the Council, by unanimous vote of the members who are voting members, requests the taking of such actions," *id.* § 1855(c)(2)(A), NMFS has a voting seat on each Council, *id.* § 1852(b)(1)(B), and so would have to concur with all other Council members in requesting emergency action in order for that provision to be operative.

Reviewing the Act in its entirety, there is no situation in which NMFS is subservient to the Councils, as Appellants wrongly contend. Congress set up a system in which the Councils play an important, advisory role. But ultimately, Congress charged the Secretary with authority to manage fisheries, who executes that authority through NMFS. *See J.H. Miles*, 910 F. Supp. at 1159.

If NMFS perceives that regulatory action is needed, it can take it: if an emergency exists, NMFS can act immediately; if not an emergency, NMFS can act after giving the Council a reasonable opportunity to consider the issue. And where the Council does act, its recommendations are still subject to independent review by

NMFS on both legal and policy grounds.

### 3. Appellants' assertions that the Councils wield "significant authority" are unavailing.

Against the Act's plain text and nearly every judicial interpretation of it, Appellants contend the Council wields significant authority. Each contention fails.

Appellants assert that NMFS "may only block a Council measure for unlawfulness" but not on policy grounds. Br. at 28-29. Appellants ignore the Act's plain language. The Act provides broad authority for NMFS to disapprove a Council recommendation on both legal and policy grounds. Although the national standards clearly allow for policy disagreements, *see* pp. 13-14, *supra*, the statute explicitly requires NMFS to consider discretionary factors that go *beyond* the statute's national standards. *See, e.g.*, 16 U.S.C. § 1854(a)(1)(A) (FMPs must also be consistent with "this chapter," which includes Congress's purposes and policies at 16 U.S.C. § 1801). NMFS has broad statutory authority to disapprove a Council recommendation because, for example, the measure—in NMFS's sole determination—is inconsistent with Congress's policy to be "responsive to the needs of . . . citizens" or "workable and effective." *Id*. § 1801(c)(3).

Appellants further contend that "it is always the *Council's* handiwork that is eventually made into law, even if the Secretary must approve it." Br. at 37. This contention ignores NMFS's authority to act unilaterally, such as where a fishery requires conservation and management and a Council fails to act after a reasonable

period, 16 U.S.C. § 1854(c)(1)(A), or where the Secretary finds that an emergency exists or that overfishing is occurring, *id*. § 1855(c)(1).  Moreover, the plans at issue are typically the joint work product of both the Council and NMFS.  *See* 3-JA-359 (noting that Amendment 22 was prepared by the Mid-Atlantic Council "in cooperation with the Atlantic States Marine Fisheries Commission and the National Marine Fisheries Service" and providing contact information for both the Council and NMFS).

Appellants next assert that the Council wields significant authority because it "shapes the administrative record on which any final decision must be based."  Br. at 38.  Of course, shaping the administrative record, standing alone, does not demonstrate that the Councils wield significant authority.  In *Lucia*, for example, the Court concluded that the administrative law judges at issue there exercise "significant discretion" not only because they "critically shape the administrative record"—i.e., "*rule* on motions" and "*rule* on the admissibility of evidence"—they also "have the power to *enforce compliance with discovery orders*" and, critically, to issue "*final*" decisions if the agency declines to review their decision.  585 U.S. at 248–49 (explaining those administrative law judges have "nearly all the tools of federal trial judges") (emphases added).

Council members bear little resemblance to administrative law judges. Councils do not create the complete record, lack any enforcement powers, and have

no authority to issue any "final" decisions.  The district court correctly recognized this.  *See* 2-JA-49 to 50 ("Unlike the [administrative law judges] in *Lucia* and *Freytag* . . ., the Councilmembers here are only one part of the Secretary's information-gathering apparatus in deciding whether to approve and promulgate an FMP or regulation.").  While part of the administrative record is created while a management proposal is under development by a Council, unlike judges Council members have no power to exclude evidence; the public record is open.  *See* 16 U.S.C. § 1852(h)(3).

Nor does the record close when a Council makes its final recommendation to NMFS.  In this case, for example, NMFS took two additional rounds of public comment *after* the Council's final action.  The comment period on NMFS's proposed rule to implement Amendment 22 ran through September 12, 2022.  87 Fed. Reg. 49573 (Aug. 11, 2022).  The comment period on the Notice of Availability for Amendment 22 ran through October 11, 2022.  87 Fed. Reg. 49796 (Aug. 12, 2022).  All of this record building occurred after the Council's work was done.

Relatedly, when a party challenges an action taken under the Act, it must point to error in the decisions in the record issued by NMFS, *not* the Council's decisions.  *See, e.g.*, *Brennen*, 958 F.2d at 937 (concluding plaintiff lacked standing to challenge Council's proposed fishery regulations because "those regulations were

implemented by the Secretary after review"); *Mexican Gulf Fishing Co.*, 60 F.4th at 976 (vacating NMFS's final rule, not the Council's FMP amendment).

Appellants further assert that under § 1854(a)(3), a Council's Plan or amendment "becomes final by default if the Secretary simply fails to approve or disapprove it." Br. at 40. This is incorrect. The Council's proposed Plan cannot take effect absent NMFS promulgating final regulations because the Plans themselves "do not themselves have any regulatory effect—*implementing regulations must also be enacted in order to effectuate them*." *N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 17 (D.C. Cir. 2008) (emphasis added); *see also Gulf Restoration Network, Inc.*, 730 F. Supp. 2d at 174; 16 U.S.C. § 1853(c).

To illustrate, if the Mid-Atlantic Council had submitted Amendment 22 to NMFS, but NMFS had failed to approve or disapprove it within 30 days, nothing would have happened; the governing allocations reflected in federal regulations on the books prior to Amendment 22 would have remained unchanged. Regulated parties like Harvesters look to NMFS's regulations in the Code of Federal Regulations, not the Council's Plan, for compliance. The only way a Plan or amendment becomes operative is through *NMFS's* promulgation of federal regulations under § 1854(b).

Appellants also incorrectly assert that the Council has the ability to block certain Secretarial action under § 1854(h) and §1854(c)(3). Br. at 48-52. Section

1854(h) applies only to the repeal of a Plan in its *entirety*, and it is not binding on NMFS. *See* 16 U.S.C. § 1854(h) ("The Secretary *may* repeal or revoke a fishery management plan . . . only if the Council approves the repeal or revocation by a three-quarters majority"). The statute provides that NMFS "may" (not "shall") revoke a Plan upon a three-quarters vote of the Council. In all cases, the ultimate authority rests with NMFS. Moreover, the district court correctly observed that even if § 1854(h) "were read to limit the Secretary's ability to entirely revoke an FMP, it cannot be read to limit the Secretary's ability to amend an FMP." 2-JA-50. The Secretary could simply amend the FMP to override all prior amendments and take new action (including delegation of management authority to states if desired, to effectuate Appellants' example, Br. at 50; *see* § 1856(a)(3)(B)).

Likewise, § 1854(c)(3) does not address the Council's alleged veto power at all, as it simply acts as a limitation on NMFS's ability to unilaterally implement "any limited access system" unless a majority of voting Council members approve the system. But even if a Council wants a limited access system, nothing in § 1854(c)(3) compels NMFS to implement one.

Finally, Appellants assert that the Act "empowers the Council to compel the Secretary to issue regulations" if the Council, by unanimous vote, "finds that an emergency exists or that interim measures are needed to reduce overfishing." Br. at 52 (citing 16 U.S.C. § 1855(c)(2)(A)). But NMFS has a voting seat on each Council,

16 U.S.C. § 1852(b)(1)(B), meaning NMFS would have to concur with all other Council members before requesting emergency action. Thus, § 1855(c)(2)(A) does not empower the Council to compel the Secretary to take emergency action, absent NMFS's express approval of such action. Appellants do not address this statutory reality.

The Court should reject Appellants' suggestion that NMFS can make only non-discretionary "lawfulness determinations." Br. at 34. *See Flaherty*, 850 F. Supp. 2d at 54 ("[I]t certainly does not follow that . . . NMFS may simply rubber stamp the Council's decisions."). For all the reasons stated above, Council members are not officers of the United States because they do not exercise significant authority under the plain meaning of the Act.

## B.    Appellants' Attempt to Dismantle the Act Should Be Rejected.

Even if the Court agrees with Appellants that select portions of the Act are somehow repugnant to the Constitution, Appellants' requested relief is drastic, would needlessly scrap the system for managing ocean fisheries that has been in place for nearly 50 years, would jeopardize the health of ocean fisheries, and would cause massive uncertainty and economic losses.

Appellants ask the Court to set aside the Final Rule implementing Amendment 22. Br. at 63, 69. Doing so in this context would instantly disrupt the nation's process for managing fisheries and jeopardize the conservation of fisheries for long-

term utilization.  Appellants contend that the alleged constitutional infirmities mean the Council lacks power to function at all, *see* Br. at 62-63, and that NMFS also lacks statutory authority to act "[w]ithout a validly adopted FMP amendment and regulation from the Council," Br. at 63, which Appellants claim is not possible to obtain, *id*. at 62-63.  Taken together, it appears Appellants would scrap the Act in its entirety.  If the Council cannot act and the Secretary lacks regulatory authority, it is unclear how fisheries would be managed.

The immediate effects of Appellants' remedy would be monumental. Uncertainty about how—and even whether—United States fisheries would be conserved and managed for long-term utilization would abound, with cascading effects through fisheries and businesses like those of Harvesters' members that depend upon those fisheries.  The requirements for science-based catch limits enacted by Congress in 2007[2] for numerous species of fish may effectively be nullified: if those limits were set through a process deemed unrectifiably unconstitutional, how would they be enforced?  A derby-style "race for fish" without

---

[2] *See* 16 U.S.C. § 1853(a)(15); Pub. L. 109-479 (Jan. 12, 2007); S. Rep. 109-229, at 6 (Apr. 4, 2006) ("[O]verfishing is still occurring in a number of fisheries" and failure to require "routine adherence" to catch limits "has contributed to continued overfishing."); *Conservation L. Found. v. Pritzker*, 37 F. Supp. 3d 254, 266 (D.D.C. 2014) (concluding 2007 amendments set "hard, science-based caps on how many fish could be caught each year and by demanding that accountability measures be triggered when fishermen exceeded those caps").

enforcement or oversight may ensue that would deplete fish stocks and jeopardize human life at sea, all contrary to Congress's goals. *See, e.g.,* 16 U.S.C. §§ 1801, 1851(a)(1), 1851(a)(10).

Appellants' remedy would disrupt thousands of businesses and cause untold economic losses. Depletion of fish stocks from overfishing would likely end Harvesters members' businesses and the organization itself. It would also disrupt the nation's domestic seafood supply (increasing reliance on imports); displace jobs, particularly in coastal communities; and increase food insecurity. *See* 16 U.S.C. § 1801(a).

The Court should reject Appellants' radical attempt to disrupt the process by which the nation's fisheries have been managed and conserved for the past 50 years. In resolving any constitutional flaws in a statute, the Supreme Court instructs courts to "'try to limit the solution to the problem' by disregarding the 'problematic portions while leaving the remainder intact." *Arthrex, Inc.*, 594 U.S. at 23 (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328–29 (2006)). When irreconcilable conflicts exist between the Constitution and a statute—as Appellants assert here—courts must "give 'full effect to the Constitution *and* to whatever portions of the statute are 'not repugnant' to the Constitution, effectively severing the unconstitutional portion of the statute." *Id.* (citation omitted) (emphasis added). This limited-remedies principle is in accordance with the Court's "normal rule that

partial, rather than facial, invalidation is the required course." *Id.* (quotation omitted).

Accordingly, a tailored approach that severs only the allegedly unconstitutional provisions of the Magnuson-Stevens Act, but which gives full effect to the Act's remaining provisions, is the appropriate one. Harvesters therefore urge the Court to adopt NMFS's approach should it find that any remedy is warranted here. *See* NMFS Br. at 59-65.

## V.    CONCLUSION

The Court should affirm the judgment of the district court.

Dated this 6th day of June, 2024.

<div style="margin-left: 50%;">

Respectfully submitted,

*/s/  J. Timothy Hobbs*
J. Timothy Hobbs
K&L GATES LLP
501 Commerce Street, Ste. 1500
Nashville, TN 37203
Telephone: (615) 780-6700
Email: tim.hobbs@klgates.com

Counsel for *Amicus Curiae* Seafood
Harvesters of America

</div>

**CERTIFICATE OF COMPLIANCE**

1.     This amicus brief complies with the type-volume limitation of Fed. R. App.
P. 29(a)(5) and 32(a)(7)(B) because it contains 5,890 words, excluding the
parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This amicus brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because
it has been prepared in a proportionally spaced typeface in Times New
Roman, 14-point font.

3.     This amicus brief complies with the electronic filing requirements of Local
Rule 31.1(c) because the electronic version of this brief filed with the Court
was scanned with a commercial virus scanning program, Carbon Black Cloud
Sensor 64-Bit, Version 3.9.2.2698, and no virus was detected.  I further certify
that the text in the electronic copy of the amicus brief is identical to the text
in the paper copies filed with the Court.

Dated: June 6, 2024                    */s/ J. Timothy Hobbs*
                                       J. Timothy Hobbs
                                       Counsel for *Amicus Curiae* Seafood
                                       Harvesters of America

# CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2024, the foregoing amicus brief as electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the Appellate CM/ECF System.  Participants in this case who are registered CM/ECF users will be served electronically by the Appellate CM/ECF System.

Dated: June 6, 2024                                  */s/ J. Timothy Hobbs*
                                                     J. Timothy Hobbs
                                                     Counsel for *Amicus Curiae*
                                                     *Seafood Harvesters of America*